Yes, sir. Good morning. My name is Ron Zimbrano. I represent the appellant. This is an employment case. My client was terminated. He's alleging he was terminated for age discrimination. We are here because the district court granted motion for summary judgment. And as to all causes of action, finding that there is no evidence of inferences of age discrimination and also no evidence for retaliation. I would like to point out what was pointed out in the appellant opening brief, that the court misapplied the McDonnell-Douglas test. The McDonnell-Douglas test in the MSJ setting allows the plaintiff to bring evidence to establish a prima facie case. If that is met, there's a rebuttal by the employer that the reasons for the termination here were non-discriminatory. And then after that, the employee has an opportunity to attack those reasons as pretext or with some other type of evidence of discriminatory motive. The court's order cuts off the analysis at the prima facie case. And I'm here to argue that that was incorrectly done. The reason for that is that there is evidence that, at least for the prima facie showing, that my client was replaced by younger employees by way of a declaration from another employee that was fired after my client was fired. Instead, the court rules that the fourth element cannot be met by immediately citing to the demographical evidence that was raised by the defendant without ever looking at the evidence provided by my client. What was the evidence provided by your client? You're talking about the DeHart? You're talking about the DeHart declaration? The DeHart declaration is the defendant's. That is the one with the evidence that purportedly there were 21 hires after my client's demise. I'm sorry, so which declaration are you? The Paez declaration that was submitted. Oh, okay, I see. And that declaration, Mr. Paez says, I was there after Plaintiff Carlos was there, and I saw that people in their 30s were being hired. Now, that evidence conflicts with... Well, people in their 30s were being hired, and so were people in their 40s and 50s, according to the demographic evidence, right? Demographic evidence is presented by the defendant. So there's a conflict in the evidence as to what the... Why is there a conflict? Why can't people in their 30s, 40s, and 50s all be being hired? Because my client isn't admitting that. That is disputed. I'm sorry, what? My client is not admitting that. He is disputing that. How is he disputing it? Does he have any evidence that people in their 50s, that the people they say were in their 50s weren't in their 50s? No, because he wasn't there. Right. So how is he disputing it? Because Mr. Paez is saying that he only saw people that were younger. I thought the record was that the replacement, the individual who replaced your client was 49, your client was 50, and the next hire was 56. Are you disputing that? No, I'm not disputing that. But California law does not preclude an inference of discrimination even if someone of the protected class is hired to replace the aggrieved employee. That is found in the Begnell case. It's even cited in the Goetz case by the California Supreme Court. Where in the Paez Declaration are you talking about? I see Declaration of Gustavo Paez. Okay. Are you referring to paragraph 9? Yes, Your Honor. Where he says, I personally heard Frank Castro tell Baltasar Ruiz that a younger employee performed his job quicker and better than Mr. Ruiz? No, I apologize. It's paragraph 8. It doesn't say anything about hiring a younger employee. Not in the declaration I've got. I apologize. Those are the notes that I wrote down, and it was cited in the record as page 7. That's 7? That's S.E.R. 7? Yes. There's nothing there. There's nothing in 7. Your Honors. Do you have any other evidence other than the Paez Declaration? No, Your Honor, because my client, well, he wasn't there, so. But if I may continue on the preclusion. This is what you're relying on to suggest that there's a material fact that precludes summary judgment? Yes. It would be to the extent that I would even be able to get that far, but I wasn't even able to get that far in the underlying case because the demographical. I think the problem that we're having is I don't see the conflict here at all. I don't see the evidence at all. He says in 10, I believe that Mario Carlos, et cetera, were also terminated on the basis of their rage, but that's it. That's just his own belief. Yes, Your Honor. It's Paez's own belief. There is a, well, Your Honors, I apologize. I should have been better prepared to point out the actual sentence in the Declaration. But there isn't one. That's why I can't point it out. Right. But if I may continue on the. Go ahead. On the premise that the, the existence of demographical evidence that older folks were hired and make sure with other younger folks is not a preclusion of the inference. The court used that evidence to completely preclude any inference in the first stage of the McDonnell Douglas analysis. That respectfully was improper. So counsel, there is evidence in the heart declaration, which I understand was put in the record by your opponents. That suggests that some of the drivers were between 20 and 29. Others were between 30 and 39, which would make them on the younger side. Correct. So does that give you enough evidence to show a prima facie case? Just on the fact that they have actually hired people in their 20s and 30s? If there is another element of circumstantial evidence with regards to the judge, very respectfully, your honors, he jumped the gun on the first step. He should have allowed this evidence to be, okay, you have a prima facie case. Then the defendants allowed to present their evidence of a demographical. So what, what do you say makes up your prima facie case? I didn't hear the last thing you said. What is your prima facie case? What facts make up your prima facie case? That, that Mr. My client was also, was replaced. There was a, there were younger folks and older folks that were, that were, that were hired after he was terminated. And that also two other older employees were fired at, after my client was fired. So the inference is that older, older drivers were being terminated and replaced. Now I understand that the demographical evidence presented by the defendant is compelling, but it should not be plugged in, in the first part of the McDonnell Douglas analysis. Doesn't he at least have to show that he's replaced by an older person, by a younger person? No, I'm sorry, your honor. So what does he have to show? He just has to show a discriminatory animus. Before, in the prior cases back in 2000s and the nineties, there was. Well, the discriminatory animus, no one said anything to him. No, no one is. And the statements to Pius were, for the most part, pretty quick. They said something about he walked slowly, and that was supposed to show that he was old? Absolutely, your honor. The statements made by the defendant is not what's going to get me over the hurdle here. What's getting me over the hurdle here is that the court did not apply the test correctly. The demographical evidence should not have been applied until step two of the McDonnell Douglas test, but instead it was shoved into step one. Had the McDonnell Douglas test been correctly applied, the prima facie case, the evidence for that is that my client was over the age of 50, he was qualified to do the job. There's no, other than what happened in the last year, there's no evidence that he wasn't doing his job for 16 years. Can I turn to the retaliation claim? Yes. Is there any evidence that Mr. Carlos voiced his age discrimination complaints before he was terminated? He did not do so using the words, using age. Any evidence that he voiced at all? There is just a, we are making the argument that there's an inference through that he was complaining about age discrimination through his initial letter in October 2013. He was complaining about his treatment, but he didn't say anything about age discrimination. He did not use the words age discrimination, no. But they should have known he was complaining about age discrimination? That is the argument, your honor, yes. The more. If he hadn't made an age discrimination complaint before the retaliation claim, before he was terminated, there's no retaliation, correct? I would have to admit that, yes. It would be hard for me to argue that instead. But I'm here to argue that the McDonald's exercise was incorrectly applied. And before, I know I have nine seconds left. If it were correctly applied, we would have been able to show that there is no evidence that my client was a person supposedly, at least no admissible evidence that my client was a person that was complained about. I thought they checked and saw who was the person who was driving that day and said it was him. Well, he referred to a bill of lading that was not provided in the evidence. So that should have been precluded as a hearsay. The declaration says he looked at a bill of lading for that time and that supposedly his name was on it. But we are being asked to believe him for the truth of the matter asserted for a document that was never produced to the court. I still don't know what that document says. For all we know, it doesn't have his name. Another compelling evidence is that the person that supposedly made this complaint didn't want to make anything in writing. There's no description in the contemporaneous emails from the company describing Mr. Carlos. There's no real admissible evidence pointing to him other than we just have the trust, the supervisor that we're alleging fired him for discriminatory reasons that I looked at this bill of lading and it actually has his name. But we don't have that, and that wasn't before the court. Did Mr. Carlos put anything in saying it wasn't him? Well, he said in his testimony he did, yes, and also in his declaration to submit that it wasn't him. Okay, your time is up. I'll give you one minute. Thank you. Thank you. Good morning, Your Honors. May it please the court. I'd like to address out the gate the issue that the district court didn't apply the McDonnell-Douglas standard correctly. In fact, the McDonnell-Douglas standard is a three-pronged test. There's the prima facie showing, okay, one of which is to establish a causal connection between the adverse employment action and discriminatory animus, and in an age discrimination case, specifically that the employee was terminated, I mean was replaced by someone substantially older. I will get to some of the case law in a moment. If an employee cannot meet that. Substantially younger. Substantially younger. I apologize. If the employee cannot meet that burden, we don't even get to the next step, which is the employer showing that there was a legitimate non-discriminatory or non-retaliatory reason. I want to get to the issue in this case. There seems to be a misapplication of these two particular cases that they seem to rely on. The first case is in the Branson case. In that case, for the proposition that you don't need to necessarily show evidence that you retained younger employees is evidence of discrimination. In that case, that was a reduction-in-force case. The circumstances of that case are distinguishable from this case, particularly whereas here we had evidence that Mr. Carlos was replaced by someone older than him. But even our hiring practices showed not only. What do you mean by replaced? You mean the next person hired? The next person hired. No, the second next person hired, not the next person hired. Correct. Correct. The next person that was actually hired by the company was, at the time, four years older than Mr. Pais. That case is just distinguishable because in that case the court said there is a rebuttable presumption in reduction-in-force cases because in a reduction-in-force case you're letting people go because, for economic reasons typically, you can't hire anybody new. So the court in that case says, well, there's a rebuttable presumption that if everybody that you select, if there's a substantial number of the people retained are younger vis-à-vis those that were let go, that would be a rebuttable presumption. Here, even if you applied that to this case, which, as I say, is distinguishable because it was a reduction-in-force, the demographical evidence that we submitted, which, by the way, Mr. Pais never objected to, the Dayhart Declaration, nobody objected to that declaration. Taking the evidence as a whole, which the district court did, as well as the declaration of Mr. Pais, was considered by the court. When you take all of that information into consideration, it's enough evidence, which is undisputed, to rebut that presumption. And then the second case, which is the Begnall case, and I think this sort of goes to the heart of the arguments made by the simply by virtue of that the next person that we hired was older than Mr. Carlos is somehow outcome dispositive. That was what the court did. Simply by virtue of that piece of evidence, the court said we won. And that's not what the court did. The court really did look at all of the evidence, and again, not making the prima facie showing. You don't get to the second or even the third text, the third prong of the McDonnell-Douglas standard, which is pretext, which is a substantially higher showing that needs to be made. But I'd like to just briefly discuss Begnall to show what they did in that case. First of all, it was a case that was a judgment notwithstanding the verdict. So it was really the circumstance where the trial court eliminated, took away the jury's finding on the facts, and I think that that's an important something to point out there. And the court said in that case one of the plaintiffs was let go and someone at the company assumed her responsibilities, and that particular individual happened to be within the protected category. And so the court granted judgment notwithstanding the verdict, saying simply by virtue of that piece of evidence, we're taking that away from the jury. In that case, and on appeal, rightly so, the court said you can't do that. There was other evidence that should have been considered, and the jury did consider that evidence, weighed the credibility of the witnesses, and made that determination that there was discrimination there. And the court reversed, saying no, there was also evidence in that case from the president of the company, and it's worth noting because it's something that's definitely absent in this case. In that case, there was evidence from the president that he made a comment to someone in marketing saying that we'd like to have someone that's young but not too young, someone that wears makeup but not gaudy makeup, someone that dresses well but doesn't overdress. So in that case, there was other evidence that was considered by the jury. We don't have that here. We don't have any evidence of any ageist remarks being made to Mr. Carlos. Yes, we have, but his colleague, Mr. Paius, says some things that don't seem to be terribly relevant, but he did say something about that they wanted him to retire or that said that he should retire. Let's see exactly what they said to Paius. They said, told him he should retire, and then he overheard Frank Castro tell Balthazar Ruiz that a younger employer performed a sharp crickle. Well, that doesn't mean very much. So the only possibility is to swing it back to retirement. Correct, and I think what we have to keep in mind here, Your Honor, is that these are the comments and the statements made in Mr. Paius' declaration are based entirely on his own subjective belief as to what people at Old Dominion said to him. Contrasted to, for example, the statement in this case, in the Begnal case, where that clearly implicates, you know, comments that speak to age and younger versus older. Mr. Paius' subjective beliefs as to how he was treated cannot be extended to Mr. Carlos. Well, the statement, he told me I should retire, is not a subjective belief, is it? It's a subjective belief that he's telling me I should retire because I'm old. And, I mean, that's as to Mr. Paius. I mean, I think that that's a whole other issue as to whether you can take the subjective beliefs of a non-party as to how the employer treated that non-party and therefore submit that as evidence in support of how the company treated Mr. Carlos. And we submit that you can't do that, Your Honor. When was, I mean, it was Friday, September, and he wrote this letter. He did write a letter in which he essentially complained of age discrimination, but it was afterwards, is that right? Correct, Your Honor. That was approximately two weeks after. That was when? That was about approximately two weeks after his actual termination of employment. And the law is very clear in the Ninth Circuit and, frankly, around the country, that you don't have to utter magic words for protected activity, but it's really a notice standard. You really do have to put the employer on notice of the alleged unlawful conduct. And an employer really cannot be in a situation where they're trying to glean from, you know, unarticulated facts and circumstances. And in this case, the letter that Mr. Carlos drafted to the CEO of the company back in 2013, I mean, admittedly a deposition, he admitted, that had nothing to do with age. It was really an issue of just feeling micromanaged and mistreated. And the reality is that, as the district court correctly noted, there was nothing in these evidence of micromanagement. They're missing the next step, which is to show that the micromanagement was not extended to younger employees. And we just don't have evidence of disparate treatment between the younger and the older here. And the demographical evidence, which, again, was not contested by Mr. Carlos at the summary judgment stage, taken as a whole shows that the company made a legitimate decision here and, going forward, continued to apply people well into the protective category. I understand that you think we don't get beyond the prima facie case, but what about the suggestion that there really isn't any evidence in the record showing that he was the person that was being complained about? There is evidence in the record, Your Honor, that Mr. Bunton did confirm through the daily routes that it was Mr. Carlos. Well, he says he did, but he didn't submit the routing statements. Is that right? He says he did. Correct. And through the e-mails. I.e., I looked at a piece of paper, and this piece of paper reported that this was the guy. So you would say that was a business record and not hearsay? But he didn't submit the business record. What is the evidence? That's correct. I think, well, first of all, that was never objected to. There was no objections to the declaration submitted by Mr. Carlos, and so that would, I guess, be deemed admissible, Your Honor. But the reality is that there were e-mail correspondence that corroborated and there were acknowledgments that it was Mr. Carlos. Acknowledgments by? By the company in communications with the people at Luminance, which is the customer, that it was Mr. Carlos. Meaning they looked at this piece of paper and they concluded it was Mr. Carlos? I don't believe it was the bill of lading. I think it was actually just on the daily route, that that was on his daily route, and that was confirmed by the internal customer service at Old Dominion, along with Mr. Bunton, that that was, in fact, Mr. Carlos. I think you're about up. Thank you, Your Honor. Harold, give me one minute. Thank you. With regards to objecting to the actual declaration, the declaration, as far as what Mr. Benton said he looked at, that was objected to. The court overruled the objections. It was specifically objected to on the basis of conclusory and lack of knowledge. With regards to, I was able to look at my notes, Your Honors. I misstated before that it was Paez that said he saw younger drivers being hired. It was actually Mr. Carlos himself in paragraphs eight and nine where he said that. Again, had the McDonnell-Douglas test been appropriately applied here? There is evidence that. That doesn't even say anything about who was hired after he was hired. I mean, this kind of an allegation just means that any company that hired anybody that was younger than somebody that they might fire in the future ought to be careful because you've now created a prima facie case if you hire younger drivers. Well, the policy of the state allows, it's not supposed to be an onerous burden. That's a language even the Supreme Court uses here in this state. But there's a reason for the sequencing in an age discrimination case that suggests that you do need to show that you were replaced by somebody who was younger. It is not a requirement. Just that we happen to be hiring people that are younger than 50. It's not a requirement to show a younger person replaced you. It's something that helps, but if you have evidence. If you had any other evidence, but you don't have any other evidence. Do you counsel? Other than the observation that folks that were younger outside the protected class were hired and also by their own evidence that folks were hired. The state does not allow someone to get out of liability of discrimination just because you hire somebody in a protected class. You could still be racist if you fire a black person and you hire another black person. That's allowed. That's true, but the question is what, if you have direct evidence, of course you can do that. But if you're trying to do it in this inferential way through circumstantial evidence, you have to have something at the outset. And so what is your contention of the something? The something is as long as you hired some younger people, even if you also hired older people. Is that the contention? Yes, because the case law allows for you to combine that with other circumstantial evidence. Right, but what is the other circumstantial evidence? That's the problem. What other evidence do you have? Well, that there is no evidence that my client was a person supposedly, the person who made a comment. You're saying that, did you object to the evidence? Which evidence? The evidence where he said, I looked at the bill of lading or the assignments for the day and that's who it was. Yes, it's actually the last item that's objected to in the underlying case. But none of that is related to age. That's the problem. You don't have anything on there that says, yeah, we're just disciplining drivers who are older for going off route at lunch. But it doesn't have to be a hard line rule like that. Give us something that suggests that there was an age problem. Give a comment by a supervisor. I don't have one. Something said to him that he had a prior complaint about the way they were treating him because of his age. If you don't have anything else, counsel, then how on earth are we supposed to find that you've shown a prima facie case? Just because they also hired people in their 30s. Because the law allows it, Your Honor. I believe the case is shown. What law? Give us a case that would allow that, where your client has no other evidence, other than the fact that some people who have been hired in a broad swath of time about the time he was terminated were a little bit younger than he was. The best I have is this. There's evidence that we presented and there's evidence that they presented, that older people were being fired and younger people were also being hired to replace them, along with older folks. Now, combining that with the fact that there is no evidence that my client was a person that supposedly was making sexual looks or comments to this one client. That is the case. Now, the court didn't even look at the potential lie. In fact, the court said you can't even get to talking about pretext. I am arguing that the process that is laid out in McDonough-Douglas was not followed by the district court. The district court found the demographical evidence so compelling that it weighed the evidence as true without making any inferences to the other way, which is the opposite of what's supposed to do in a motion for summary judgment. In a motion for summary judgment, the plaintiff is supposed to get the rub of the green, so to speak. But that didn't happen. As soon as the demographical evidence was looked at, and that's the first thing the court talks about after talking about the fourth element isn't met. Look at the demographical evidence. That is incorrect application, especially in light of the case law. Okay. Your time has passed. Thank you. Thank you for your time. And I thank both of you for your arguments. And the case of Carlos v. Oldham in the front line is submitted.
judges: Berzon, Bybee, Woodcock